Stanard, J.
I concur in the opinion that will be delivered by the president. Upon the questions presented by the exception to the instruction given by the court below, his reasoning, I think, fully sustains his conclusions, and any thing from me would be superfluous.
I will, however, notice an objection, not taken in the court below, but urged in this, to the supposed misjoinder of the parties plaintiffs. It is presented thus. The exception taken to the opinion of the court touching the effect of the statute of limitations on the title to the property in question, shews that the plaintiffs offered in evidence a deed of mortgage, by W'hich the slaves sued for were conveyed to three of the plaintiffs and Daniel Withers the intestate of the other plaintiff James S. Piclcett; and the defendant in error here insists that it is hence manifest the plaintiff Piclcett does not claim suo jure and cannot join with the other plaintiffs, and that the court below should have entered judgment of nonsuit. This objection is not tenable. 1st, The deed of mortgage is before this court for the purpose only of presenting the question on which the court be *195 low was called on to instruct the jury, and the matter in evidence from which that question arose. It cannot be looked to for the purpose of bringing in judgment other questions which might have been raised on it but were not, especially one incompatible with the instruction sought for by the party in whose behalf the objection is now made in this court; Newsum v. Newsum, 1 Leigh 86. Barrett v. Wills, 4 Leigh 114. 2ndly, If there was a misjoinder of parties, it was not the duty of the court ex officio to notice it. The nonsuit could not be entered but at the instance of the defendant, and he cannot object here that that was not done in the court below, which was not asked for by him, and which could not have been done but at his instance. Srdly, Though this court should take cognizance of the objection, and could properly look to the deed of mortgage as the foundation of it, it ought not to sustain it. It does not appear when Daniel Withers died. If he died while the slaves were in the possession of Jesse Withers and consequently in that of the mortgagees, his representative became a tenant in common of the slaves wilh the surviving mortgagees, and was tenant in possession, as the possession of one joint tenant or tenant in common is the possession of all. Tenants in common may join in personalactions, and must join in a suit to recover an indivisible personal chattel. Litt. ^ 321. Co. Litt. 196b. 197a. 19Sa. So in replevin, tenants in common must join. Buller’s N. P. 53. _ Co. Litt. 145. An executor possessed of a personal chattel, and losing possession thereof, may sue to recover it without stating his representative character. He may sue to recover it suo jure; and if he describes himself as executor, it may be treated as descriptio persones. There seems no stronger objection to the union of such an executor with surviving tenants in common, to recover their possession of a personal chattel, than there would be if he had become a tenant in common *196 by any other title. If, because one tenant in common of an indivisible chattel is an executor, he is disabled from joining in the action, then, as the other cannot she alone for the entire thing, both would be deprived of remedy to recover the specific property.
Tucker, P.
Upon the first question made in this case, there can be no reasonable doubt. It is contended that the demand of the plaintiff is barred by the statute of limitations; and as the suit was commenced within five years after the seizure and sale of the slaves, the position can only be maintained on the hypothesis that the possession of Withers the mortgagor was adverse to the mortgagees. But this hypothesis is contrary to every notion of a mortgage, and of the relations of mortgagor and mortgagee. Whether the mortgage be of real or of personal property, the retaining possession by thé mortgagor is never looked upon as adversary to the mortgagee. If the subject be real, he is looked upon as a tenant at sufferance, whose possession is never held adversary to his landlord: if it is personal, he retains the possession from the implied character of the transaction. It is, in its nature, but a charge—a lien or incumbrance upon the property, for the security of the payment of money, or the performance of conditions (as in this case) at a future day. Until that time, it is implied, and sometimes it is so expressed, that possession shall remain with the mortgagor. Were it otherwise, it would' be the case of a pledge, not of a mortgage. Were it otherwise, the transaction might be void for failure to deliver possession, under the doctrine of Edwards v. Harden, 2 T. R. 587. But whatever doubts might exist in England as to this matter (see Ryall v. Rolle, 1 Atk. 165.) they no longer exist here. In Clayborn v. Hill, 1 Wash. 177. this court held that a mortgage of personalty, if duly recorded, was valid although the mortgagor retained possession *197 of the property. This decision is again recognized in Glasscock v. Batton, 6 Rand. 78. And in the case of U. States v. Hooe, 3 Cranch 73. 88. chief justice Marshall, delivering the opinion of the court, asserts the same principles. After referring to the case of Hamilton v. Russel, 1 Cranch 310. as to absolute bills of sale, he says : “ But the difference is a marked one between a conveyance which purports to be absolute, and one which, from its terms, is to leave the possession in the vendor. If in the latter case the retaining of possession was evidence of fraud, no mortgage could be valid. The possession universally remains with the grantor, until the creditor becomes entitled to his money, and either chooses or is compelled to exert his right.” In Hamilton v. Russel, 1 Cranch 310. 316. he also says, “ The recording acts do not comprehend absolute bills of sale among those where the title may be separated from the possession, and yet the conveyance be valid if recorded implying thereby, that a recorded mortgage of personalty would be valid though the mortgagor retained possession. All this can only be upon the supposition that the retaining of possession is consistent with the true character of the deed, and with the universal understanding that the mortgagor is to hold the possession by the permission of the creditor, until he makes default. The holding possession at the will of the creditor is then not adversary but permissive, and no protection under the statute of limitations can ever be acquired from such holding, until, by lapse of time, payment is presumed ; and when that is done, the possession is taken to be adversary from the supposed date of payment, or a release is presumed to have been executed by the mortgagee, by reason of the discharge of the demand or the fulfilment of the stipulations.
But though, by the character of the transaction, the mortgagor is permitted to retain possession at the will of the mortgagee, he does not stand upon the footing of *198 a loanee under the statute of frauds. He holds not by loan, but, by the character of the stipulation between the parties, his original possession remains undisturbed. No creditor or purchaser is deceived or defrauded. It *g ¿juty 0f the party who would trust the mortgagor on the credit of the property thus left in his possession, to look to the record; and there he would see, not indeed a recorded loan, but a recorded mortgage of the property itself. I am of opinion, therefore, thaf the second point made in the cause is unsustained, and that the defendant is not more protected by the statute of frauds than by the statute of limitations.
Lastly, it is objected that in this case there is a misjoinder of persons claiming in their representative character, with others claiming suo jure. Whether the fact be so or not is matter of doubt, as the words indicating the representative character have been possibly used merely as descriptio persona. If we could refer to the mortgage upon this point (which I doubt) we should find indeed that the executor of one of the mortgagees is plaintiff. But still, as the point was not made in the court below, and as the objection may be more properly made upon the subsequent trial, if the exhibition of the title shall sustain it, I do not think we can notice it here. It would conflict with the principle settled in Newsum v. Newsum, 1 Leigh 86. and Barrett v. Wills, 4 Leigh 114.
There is however, I think, one error in the proceedings, which this court should correct. It is the revival of the proceedings in the name of Lewis Porter. The law on this subject I take to be, that if the parties were joint tenants, the remedy survived, though under our statute the right did not (see Gow on Partn. 172. 173. 174.); and so the cause ought to proceed in the name of the survivors. And as to tenants in common, they may and must join in an action for the recovery of an indivisible subject, 3 Bac. Abr. 705. but if one dies, the *199 remedy survives; Co. Litt. 189a. And this from ne<-1 „ , , - . . cessity; for the executor of the decedent cannot join with the survivors, since the plaintiffs would then claim by several rights and titles, and if they failed, the judgment against them would be several. Moreover, the subject of the action being one and indivisible, the wrong is of course a joint wrong, and the remedy is therefore joint and consequently survives. The scire facias then was improvidently awarded, and should be set aside, together with the proceedings thereupon.
Judgment reversed with costs, verdict set aside, and cause remanded for a new trial, “ on which the instruction given on the former trial is not to be repeated.” And order awarding scire facias, and all the proceedings thereon, set aside, and scire facias quashed.